IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DWIGHT LANGSTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CALPINE CORPORATION, FRANK CASSIDY, THAD HILL, LAURIE BRLAS, JACK A. FUSCO, MICHAEL W. HOFMANN, DAVID C. MERRITT, W. BENJAMIN MORELAND, ROBERT A. MOSBACHER JR., and DENISE M. O'LEARY,<br><br>Defendants. | Civil Action No. _____<br><br>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Dwight Langston ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction (the "Proposed Transaction" or "Merger") announced on August 18, 2017, pursuant to which Calpine Corporation ("Calpine" or the "Company") will be acquired by Volt Parent, L.P. ("Parent") through its wholly owned subsidiary, Volt Merger Sub ("Merger Sub").

2. Parent and Merger Sub are controlled by Energy Capital Partners III, LLC, its affiliated funds, and a consortium of co-investors, including Access Industries, Inc. and the Canada Pension Plan Investment Board (collectively "ECP"). Energy Capital Partners III, LLC, together with its affiliated funds (collectively, "Energy Capital Partners"), is a private equity firm

focused on investing primarily in North America's energy infrastructure. On August 10, 2017, ECP formed Parent and Merger Sub for purposes of entering into the Merger Agreement.

3. On August 17, 2017, Calpine's Board of Directors (the "Board" or the "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Parent and Merger Sub. Pursuant to the terms of the Merger Agreement, Parent will purchase each issued and outstanding share of Calpine common stock for $15.25 in cash (the "Merger Consideration"). Upon completion of the Merger, Merger Sub will merge with and into Calpine, with Calpine continuing as the surviving corporation and as a subsidiary of Parent.

4. On October 19, 2017, Defendants filed a preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction (the "Proxy"). As described herein, the Proxy omits material information with respect to the Proposed Transaction, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

5. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' wrongdoing described herein.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Calpine common stock.

10. Defendant Calpine is a Delaware corporation, with its principal executive offices located in Houston, Texas. Calpine's common stock is listed on the New York Stock Exchange under the symbol "CPN."

11. Defendant Frank Cassidy ("Cassidy") is the Chairman of the Calpine Board and has served as a Board member since 2008.

12. Defendant Thad Hill ("Hill") is the Company's President and Chief Executive Officer ("CEO") and has served as a Board member since 2014.

13. Defendant Laurie Brlas ("Brlas") has served as a Board member since 2016.

14. Defendant Jack A. Fusco ("Fusco") has served as a Board member since 2008.

15. Defendant Michael W. Hofmann ("Hofmann") has served as a Board member since 2013.

16. Defendant David C. Merritt ("Merritt") has served as a Board member since 2006.

3

17. Defendant W. Benjamin Moreland ("Moreland") has served as a Board member since 2008.

18. Defendant Robert A. Mosbacher, Jr. ("Mosbacher") has served as a Board member since 2009.

19. Defendant Denise M. O'Leary ("O'Leary") has served as a Board member since 2008.

20. The defendants listed in ¶¶ 11-19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

21. Calpine is America's largest generator of electricity from natural gas and geothermal resources with operations in competitive power markets. The Company's fleet of 80 power plants in operation or under construction represents approximately 26,000 megawatts of generation capacity. Through wholesale power operations and its retail businesses, Calpine Energy Solutions and Champion Energy, the Company serves customers in 25 states, Canada and Mexico.

22. In soliciting shareholder approval for the Proposed Transactions, Defendants issued the Proxy, which purports to contain a summary/overview of the Proposed Transaction, but omits certain critical information, which renders portions of the Proxy materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein. As a result, Calpine's stockholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

23. In particular, the Proxy contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by Calpine's financial

4

advisor, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion, including certain of the projections that Lazard relied upon in performing its financial analyses.

24. The Proxy states that in rendering its fairness opinion, Lazard performed a *Discounted Cash Flow Analysis* ("DCF") (on page 60) using Calpine management's June 2017 Projections. According to the Proxy, Lazard discounted to present value Calpine's 2H 2017E through 2021E Adjusted EBITDA, Unlevered Free Cash Flow, and Levered Free Cash Flow. However, although the Proxy provides total projected Unlevered and Levered Free Cash Flow, it fails to disclose the constituent line items used in calculating those projections.

25. Specifically, the Proxy (on page 61) defines "Unlevered Free Cash Flow" to "include[], among other line items, growth capital expenditures, non-recurring items and operating lease payments." Yet, the Proxy does not disclose the values of growth capital expenditures and non-recurring items, nor does it disclose the identities or values of the "other line items" included in the calculation of Unlevered Free Cash Flow.

26. Similarly, the Proxy (on page 61) defines "Levered Free Cash Flow" to "include[], among other line items, growth capital expenditures, non-recurring items, cash interest expense (net), debt paydown and associated fees and operating lease payments." Yet, the Proxy does not disclose the values of growth capital expenditures, non-recurring items, or cash interest expense (net), nor does it disclose the identities or values of the "other line items" included in the calculation of Levered Free Cash Flow.[1]

---

[1] The Proxy makes it virtually impossible for Calpine shareholders to follow the seemingly inconsistent naming of cash flow figures. Specifically, on pages 61-62, there are line items titled "unlevered free cash flow" and "levered free cash flow." By contrast, on pages 66, 68, and 70, there are line items tiled "adjusted unlevered free cash flow" and "adjusted free cash flow," and the terms from pages 61-62 are not referenced. Footnotes to the Proxy's discussions of these terms do not explain the numerical differences between these two sets of figures, including what adjustments were used.

27. The Proxy does not disclose the inputs Lazard used in determining the three discount rate ranges in its DCF analysis (discussed on page 61).

28. The Proxy also fails to disclose the same information—related to Unlevered and Levered Free Cash Flow and discount rate inputs—with respect to Lazard's *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections* (on page 62).

29. Based on Calpine's most recent annual report filed on Form 10-K with the SEC on February 10, 2017, the Company has significant net operating losses (NOLs) that total over $6 billion. However, management's projections for Calpine (included on pages 64-72 of the Proxy), which were utilized by Lazard in performing its financial analyses, do not include the annual NOL figures.

30. The information discussed in the previous paragraphs that is omitted from the Proxy would be material to Calpine shareholders in deciding how to vote their shares, as the lack of disclosure of the individual line items and inputs that are used by Lazard in its DCF analyses, and the annual NOL figures in the projections, prevents shareholders from understanding the context of the figures or considering whether any of the inputs thereto or ranges derived therefrom are anomalous.

31. The Proxy provides Regulation G Reconciliations for the non-GAAP line items to management's projections (on pages 67-72), but not a reconciliation to the non-GAAP inputs of unlevered and levered free cash flow used in Lazard's DCF analyses, and discussed on pages 61-62 of the Proxy.

32. Calpine recognizes that when a company discloses non-GAAP financial measures in a stockholder communication, the Company must also disclose the most directly comparable GAAP measures and a quantitative reconciliation of forward-looking information. 17 C.F.R. §

244.100. As the Proxy states, "non-GAAP measures should be viewed as a supplement to and not a substitute for our GAAP measures of performance and liquidity, and the financial results calculated in accordance with GAAP and reconciliations from these results should be carefully evaluated." Proxy at page 72.

33. The Proxy also fails to disclose, with respect to Lazard's *Selected Precedent Transaction Multiple Analysis* (on pages 62-63), the individual multiples and financial metrics for each of the transactions observed by Lazard in its analysis. This information would be material to Calpine shareholders in deciding how to vote their shares, as the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttresses that result. When a financial advisor's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

34. The Proxy also fails to disclose potential conflicts of interest related to Lazard, as it does not mention whether Lazard received any fees from ECP over the prior two years. This information would be material to Calpine shareholders in deciding how to vote their shares, as potential conflicts of interest between Lazard and ECP caused by monetary or other considerations or ties among the two entities supposedly operating at arm's-length may have tainted the sales process in favor of the acquiror, to the detriment of Calpine and its shareholders.

35. The Proxy states that, at an August 16, 2017 Board meeting, "the Calpine Board discussed certain relationships with Lazard and various participants in the strategic alternatives review process of which the Calpine Board was previously made aware prior to this meeting . . . and determined that such relationships were not material to the Calpine Board's evaluation of strategic alternatives." Proxy at page 49. The Proxy does not disclose what these "certain

relationships" were. Similarly, the Proxy states that there were "certain existing and prior relationships of employees of Calpine and . . . Energy Capital Partners," but it fails to disclose the nature of those relationships, including the identity of the employees involved.

36.     The Proxy also fails to disclose whether, prior to signing the Merger Agreement, Energy Capital Partners (or ECP) informed or insinuated to Calpine's executive officers, directors, or management that it was interested in retaining them following the close of the Proposed Transaction. Although the Proxy says that "Calpine's senior management . . . did not negotiate or enter into any employment arrangements" with Energy Capital Partners in connection with the merger, it does not disclose whether Energy Capital Partners made its future employment retention intentions known in some way short of formal negotiations, or whether formal employment negotiations took place with Calpine's *non-senior management* employees or Board members. It is likely that Energy Capital Partners, a private equity firm, would be inclined to retain management of companies it has acquired.

37.     This information in the prior several paragraphs would be material to Calpine shareholders because it could shed light on potential conflicts of interest created by these relationships that may have tainted the sales process.

38.     The Proxy also fails to disclose why several of Lazard's financial analyses described therein were "presented to the Calpine Board for informational purposes only and did not provide the basis for, and were not otherwise material to, the rendering of Lazard's opinion." Proxy at page 61. Such analyses include Lazard's: *52-Week High/Low Trading Prices*; *Illustrative Discounted Future Stock Price Analysis*; *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections*; and *Selected Precedent Transaction Multiple Analysis*.

8

39. This information would be material to Calpine shareholders in deciding how to vote their shares because it sheds light on how much weight shareholders should place on various financial analyses contained in the Proxy, especially those that may undermine the fairness of the Merger Consideration.

40. In particular, Lazard's *Discounted Cash Flow Analysis—Updated February 2017 Marketing Projections* (on page 62), which was inexplicably presented "for informational purposes only," resulted in an implied price per share range for shares of Calpine common stock of $14.75 to $20.75 per share, which is significantly higher on average than the Merger Consideration of $15.25 per share. By comparison, the DCF analysis contained elsewhere in the Proxy, which was purportedly not presented to the Calpine Board for "informational purposes only," resulted in a much lower (on average) implied price per share range of Calpine common stock, of $10.25 to $15.75.

41. Without the foregoing material disclosures, it is impossible for Calpine's shareholders to fully understand and interpret these financial analyses, including their impact on the fairness of the Merger Consideration, when determining whether to vote in favor of the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

42. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Calpine (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

43. This action is properly maintainable as a class action for the following reasons:

9

a. The Class is so numerous that joinder of all members is impracticable. As of October 18, 2017, there were 366,346,378 shares of Calpine common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Proxy as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy;

g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act
### and Rule 14a-9 Promulgated Thereunder
### (Against All Defendants)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

47. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

11

48. As discussed herein, the Proxy misrepresents and/or omits material facts concerning, *inter alia*: the financial analyses performed by Lazard in support of its so-called "fairness opinions," including certain of the projections that the financial advisor relied upon in performing its financial analyses.

49. Defendants prepared, reviewed, filed and disseminated the false and misleading Proxy to Calpine's shareholders. In doing so, Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50. The omissions and incomplete and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding how to vote their shares. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

51. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing Lazard's complete financial analyses purportedly summarized in the Proxy.

52. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

53. Calpine is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. Defendants knew that Plaintiff and the other members of the Class would rely upon the Proxy in determining whether to vote in favor of the Merger.

55. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

56. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of Calpine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Calpine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities

violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Proxy.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

62. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

E. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 31, 2017

Respectfully submitted,

*/s/ Jeffrey W. Chambers*
Jeffrey W. Chambers

**WOLF POPPER LLP**
2929 Allen Parkway, Suite 200
Houston, Texas 77019
Tel: 713-438-5244
Fax: 212-486-2093
jchambers@wolfpopper.com

*Counsel for Plaintiff*

OF COUNSEL:
**WOLF POPPER LLP**
Carl L. Stine
Robert S. Plosky
845 Third Avenue
New York, New York 10022
Tel.: 212-759-4600
Fax: 212-486-2093
Email: cstine@wolfpopper.com
rplosky@wolfpopper.com

15